Your Honor, this is the second case of the morning of the fall, 209-347, David W. Wilfong v. L.J. Dodd Construction and G. Porter & Company, Pet Ball. On behalf of the Pet Ball Honor, Mr. Stephen Carbonelli and Ray Rudnick. On behalf of the F.W.G. Porter, Ms. Elizabeth Knight. On behalf of L.J. Dodd, Ms. Melissa Murphy Pecos. Thank you. Are you gentlemen going to split your time? Yes, if we may. You may. Thank you. May I approach? Yes, sure. May it please the court, my name is Stephen Carbonelli and my rebuttal is Ray Rudnick. I'll save time for him. And at the counsel table is Ross Carbonelli who also worked on this case in the trial court. We represent David Wilfong. This case is up on appeal from a grant of summary judgment by the trial court with a written two-page opinion. Following a motion to reconsider was filed and that was also denied. Within 30 days of notice of appeal to this court was filed and this is your de novo review of the summary judgment and an abuse of discretion on the motion to reconsider. The decision of the trial court should be reversed and remanded because it was, it makes findings of fact that were contested below and unsupported by the record and it does not mention the constructive negligence count that was included in the complaint and argued below. Further, this court may ignore arguments of waiver in order to achieve a just result and in this case the record supports all arguments based in appellant's brief because below the summary judgment argument and briefs were directed at whether material questions of fact existed and factual arguments. Outline material questions of fact, one, two, three, four, et cetera. You want the questions of fact, one. That's your main argument, isn't it? Yes. One is there are questions of fact on open and obvious. Two, that there was a distraction exception that should have applied and in this case the cell phone was not even the cause of this. When you say open and obvious, what are you talking about? The rut or the, what was within the rut that caused the rut to become a cave? What we're contending is that the ruts themselves created distraction and the ruts and the watery premises and the failure to scrape the construction. Let's go step by step. Were the ruts open and obvious? Yes or no? No, they weren't. Why? They weren't because you didn't know which rut was going to collapse, if any rut was going to collapse, and it was required for the plaintiff to walk on the top of the ruts because the photographs that are in the record depict the scene of this construction site where Mike Barr, the Oswego superintendent, said they shouldn't have been working. And there could have been plywood and there could have been stones. Wasn't there a path available? That's contested by my client. My client testified in his deposition, and we raised it in the lower court, that he said that he did not know of a path that had been provided. And as your honors are well aware, he left the... I'm sorry, but you said he didn't know. Does that mean that it doesn't exist? I think it means it doesn't exist because he takes the position that it didn't exist. That was his testimony. He was unaware of it. And if he didn't know it existed, that would be essentially the same thing. In any event, he was sent from a toolbox meeting to find steel connectors. So the general contractor said to him, he worked for Johnson Brown, and where are the steel connectors? So the general contractor knew that he had to find them. That involved not only going into the building but looking at all of the locations where materials had been placed. And when you get into the materials, you have to walk on these ruts. So we contend also that the judge below took the position that there was no deliberate encounter because he just opted to walk on the ruts, which is not true. He needed to walk on the ruts because he needed to check the entire construction site to see where the connectors were. You said he had to walk on the ruts. Did you really mean that? Because I was under the impression he was claiming that he was walking in the ruts. Well, he was doing both. And his testimony was both. But when the ruts are filled with water, then you walk on the top of the ruts. And the ruts had supported him until this one particular rut that he was looking at on the job site collapsed. And I think the distraction exception comes into play when you're walking on these ruts and suddenly one collapses and you break your leg and suffer a serious fracture. If I could inquire, is a rut topographically open and obvious? I think it is. So is it your contention that if it's not open and obvious, it relates to the composition below the top of the rut? Whether it's filled with water or ice or quicksand? I would say that when you're confronted with searching for materials on a job site that was in as much disarray as this was, you have to negotiate as best you can. This plaintiff had 30 years of experience in construction sites and had been involved in construction sites with ruts before. But this construction site was the worst he had ever seen. The testimony is overwhelming that all of the people on the job site had testified that this particular site was one of the worst they had ever seen. One of the subcontractors opined that he was shocked that they were working in these conditions and the job should have been closed down. And so my contention is that with the state of the condition of these premises, they, number one, should not have been working. If they were working, plywood could have been laid down. There was an issue with regard to scraping. One of the witnesses said that, I doubt whether with the conditions so bad, scraping would have resulted in an effective result because I think the scraper would have been stuck. That's how bad the conditions were. And I don't think that... How thick should the plywood have been? Was it supposed to support the lulls? I think it could have supported the lulls. And if... or gravel could have been spread. As I say, after two complaints by the school district, they finally put in one path, which was not appropriate for the plaintiff in this case. I thought you said there wasn't a path. Pardon me? I'm sorry, I thought you said there wasn't a path. The plaintiff testified that there was not a path that he could use at this juncture. It was on the other side of the building. Didn't the path come from the parking area towards the main pavilion they were working out of? Well, that is depicted in a photograph. However, the plaintiff says that it didn't exist as it related to where he was coming from and where he was going to. And we take the position that there is a question of fact as it relates to whether or not that is going to be an alternative source. The judge took the position that it was below, that it was just simply he opted to walk on the ruts. That's not the case. He had no choice but to walk on the ruts when he was looking for the materials. Wasn't everybody walking on the ruts that were working that day? There were some flying. Well, I think that, I suppose, and whether a rut would collapse and cause an injury is the distractive situation. I think Mr. Rutgers turns to talk. I would like to say one other thing, just one thing. The lower court opinion does not even deal with the construction negligence count. We extensively argued what the contract said. We did not mention specifically 414, but that's because in the Illinois Pattern of Instructions 55 says construction negligence, which is a blend of 414 under the restatement as well as case law. Are you talking about the contracts between your client being a third-party beneficiary of that contract? Yes, we have the contracts, and we had a count in the complaint that said there was construction negligence, which was not even dealt with by the trial judge. Thank you, Your Honor. Mr. Redman? Oh, you're going to do a rebuttal? Very well. Good morning, Your Honors. Good morning. The two appellees will be splitting our time right in the middle. May it please the court, my name is Melissa Murphy-Petras. I represent the defendant appellee L.J. Dodd. And I will begin by addressing the plaintiff's point. I'm sorry. As to the open and obvious nature of the RUCs, the RUCs plaintiff deposed extensively, and we have this deposition discussed and cited in our brief in the Statement of Facts primarily at page 10 and then at pages 23 and 24 of our argument. He deposed extensively that the RUCs, first of all, were topographically open and obvious, as Your Honor mentioned. He could see them. He knew they were there. He also deposed that he knew that the bottoms of the RUCs were hard and firm and that the tops of the RUCs were unstable. And that that is why, as he walked across the site, he was stepping from the inside of one RUC to the inside of another. So there is no question of fact. He knew the RUCs were there. He knew that, in part, at certain areas, the RUCs were unstable, and that he had to walk around those areas in order to maneuver around the site safely, as did every other contractor who was on that project. As Your Honor, Justice Bowman mentioned, the deposition testimony of the other subcontractors in the record is very clear that this site was in a normal condition for a construction site in November in northern Illinois where a brick building is being built and the equipment necessary to build a masonry structure is moving on and off the site. If you have one person that says that it was the worst site he's ever seen, and then you have other testimony that it was a normal working site, does that create a material question of fact that a jury should decide relative to whether the site was just terrible and whether it was a normal building? Yeah. I understand your point. I don't think so. That does not create a material question of fact. The deposition testimony is overwhelming that this site was in a normal condition for November. And we all live here. We know what the weather is like. We've all seen construction sites. And again, the plaintiff himself testified. I knew there were RUCs. I knew they were everywhere. I knew they were hard and firm on the bottom. They were unstable on the top. And that is why he was walking across the site, stepping from the bottom of one into the bottom of another. He didn't step on the unstable top of a RUC until he took a cell phone call and continued to walk and talk at the same time. Let me ask one other question. Sure. Is there still a construction negligence count somewhere in this case? There is not. Plaintiff did not mention Section 414 in his complaint. He didn't argue that at summary judgment. He did not have it in his amended complaint. He also put no evidence in the record of retained control that is necessary to support a Section 414 pleading. That comes out. No, he didn't argue it. It's nowhere in the deposition testimony that Dodd retained control of plaintiff's work. Also, the operative contracts that one would expect to see had he properly pled a 414 claim, those would be the contracts between Dodd and plaintiff's employer, between Dodd and Porter. Those contracts are not in the record. The only contract in the record is that between Dodd and the school district. And that contract was put in the record by a dismiss defendant, the architectural firm who plaintiff sued early on, who moved to dismiss. They attached that contract to their motion. That's why it's in the record. It's not there because plaintiff put it there, and plaintiff raised none of these arguments until we reached this court. So this is clearly a premises liability case with the open and obvious, eliminating any liability with respect to Dodd. With respect to counsel mentioned water and mud and so on on the site, somehow obscuring the ruts, I would direct this court's attention again to plaintiff's deposition testimony, which is discussed at pages 23 and 24 of our brief, wherein he describes the site on the day he fell as being dry. The area where he fell was dry, and the ground on the bottom of the ruts was hard and firm. There was no water, no mud, or anything obscuring the area where he was walking. So he knew what he was doing, where he was going, and certainly should have been more careful. Dear, I will just address this very briefly and then allow my co-counsel to address her points. With respect to the Dodd school district contract, as we discussed in our brief, plaintiff is not a third-party beneficiary of that contract. There is no direct benefit to him from those safety provisions, and that's dealt with, I think, very extensively in our brief and in the Calderon case, which we cited for this court. I would respectfully request affirmance, and I will allow counsel for Porter to address the court. Thank you. Thank you. Good morning. My name is Elizabeth Knight, and I represent G. Porter. G. Porter was the subcontractor, masonry worker on these premises on the day of the accident. Just briefly, I would address the open and obvious condition issue. The plaintiff testified he knew there were ruts, the ruts were visible. He was looking right at them at the time of the accident. The landmark Supreme Court diver case that involves the distraction doctrine specifically held that a rut on a construction site was open and obvious. The trial court committed no error in finding the ruts were open and obvious in this case, where the plaintiff, in fact, admitted that he was observing them and knew that they were susceptible to breaking down and were otherwise unstable. So there was no error in finding the open and obvious condition. The plaintiff is assigning error here on the distraction doctrine, saying that the court erroneously failed to exempt him from the open and obvious fatal dismissal of his case, saying that the distraction doctrine should have been employed by the trial court, and asserts that the trial court held that the plaintiff being on the cell phone would not qualify as a distraction under Ward v. Kammerer or Diver or under the landmark Supreme Court cases on point. But by urging that the distraction doctrine exemption applies here, the plaintiff is admitting that his cause of action is negated when there's open and obvious condition because the distraction doctrine is nothing but an exemption from that. Is open and obvious a fact, or is it a mixed question of law and fact? It can be both. And it can be a question of law, as in Bucciolera's, the Illinois Supreme Court case that's cited in our brief, holds the open and obvious doctrine can be resolved and should be resolved as a matter of law when the facts are uncontested as they are here. But could there be a mixed question of law and fact? Let's assume that the facts are contested, and a trial court, after a due process hearing on the merits, makes a decision that something is or is not open and obvious. Is that a mixed question of law and fact, or is that a fact-finding? After the summary judgment, I think there's a factual statement. No, I didn't say after summary judgment. I said after a trial. After a trial. I'm sorry, I don't understand the question. Well, first off, I pointed out, or tried to point out, that I'm not talking about summary judgment where you claim that the facts are uncontested, because Mr. Carpinelli says that the facts are contested. So taking that as a premise or condition, is a finding by the court that something is open and obvious a factual finding, like it's red or it's blue, or is it red and blue and it's open and obvious? So is open and obvious a nominalization of a legal concept, which applies the precepts of law relative to duty and breach thereof, to a particular set of factual circumstances? It is precisely what you said. Yes, thank you. That's my point. I believe this is a mixed question of law and fact, is it not? It is, Your Honor. At least under these circumstances. It may be a question of law because it's uncontested. Because anything that's uncontested becomes a question of law, correct? And as the Supreme Court in Divert noted, ruts on construction site in that case were held to be open and obvious as a matter of law. But obviously there's a factual underpinning to that, as the court notes. But regardless of whether the plaintiff was distracted while he was talking on his cell phone, the plaintiff, in order for the distraction doctrine to apply, or for the exemption to be triggered, has to demonstrate factually that he first in the threshold issue was in fact distracted. And the plaintiff has unequivocally said throughout this case, in the lower court and here, that he was looking at the ground and he was contemplating his next step when he fell. Plaintiff's brief, page 618. Plaintiff's deposition, motion to reconsider, page 11 and 12. And now, for the first time in the reply briefing to this court this morning, counsel now argues he wasn't distracted by the cell phone at all. He wasn't distracted by the fact that he was talking on the cell phone. He was distracted by the ruts. I suggest that that's logically incongruous. If he was distracted by the ruts, then that means his attention. In order to be distracted, you have to have your attention diverted away from the very thing that you fell on. So to suggest that he was distracted by the ruts means he wasn't distracted logically. He was looking at the very condition that caused him to fall. What is the distraction? Doesn't the distraction have to be somewhat common to both the plaintiff and defendant relative to its construction or how it's made? In Kmart, for instance, Kmart obviously built the distraction. In this case, how does the defendant get involved in the cell phone that the plaintiff is using? The plaintiff created his own distraction. We don't, and you're correct, Your Honor. I mean, that's what the trial court specifically found in not applying the exemption. Instead of just simply at the threshold question recognizing that he wasn't distracted in the first instance, which this court in the Bellamini-Stratford case said is a prerequisite to even employing the doctrine, but he went on and did examine the quality of the distraction and found that it was created by the plaintiff himself on a cell phone. And I don't think that any party has cited any case to this court yet that involves the distraction doctrine involving the use of a cell phone, but the court found that that created by himself wouldn't qualify for the exemption under Ward v. Kmart or under Divert. Plaintiff says, well, it doesn't matter who created the distraction, and perhaps correctly so, but nonetheless, there's no precedent cited to this court that says that the distraction doctrine should be extended to include plaintiffs who pick up the cell phone and are voluntarily engaged in that activity if, in fact, they're distracted. But it all begs the question because the plaintiff unequivocally said he wasn't distracted by the cell phone in this case, and without that under this court's Bellamini case, that's the end of the inquiry on the distraction doctrine. And then, of course, the next exception is the deliberate encounter exception. Nowhere in the trial court brief or in briefs below, nor in the briefs here, did the plaintiff urge that he was forced or compelled to walk in the particular fashion that he now says in oral argument for the first time he was compelled to do in this case. He conceded the existence of the alternative path throughout the trial court record at the motion to reconsider in the trial court at page 2 and 5, and his appellate brief here at page 5, 8, 9, 13, and 21 all conceded the existence of the alternative path. He agreed a stone gravel path was erected before his accident. His reply brief is silent on this whole deliberate encounter of a fever type of exception. He structured no argument as asserting that a deliberate encounter should have been applied by the trial court. This court's decision in Bonavia, Rockford, Flotilla, page 15 of our brief, says emphatically, black letter Illinois law, the existence of the alternative route is fatal to this exception. It cannot be employed when the alternative route exists. So the trial court correctly granted summary judgment. With respect to G. Porter, it's alleged that we created the rust with our equipment. This court in Beyer, and plaintiff doesn't cite anything to the contrary, in the Beyer case in 1999 said that the fact that the defendant created the condition does not alleviate his opportunity to rely upon the open and obvious doctrine to avoid the imposition of a tort duty. And, of course, the question of the imposition of a tort duty is clearly a question of law, which is why the open and obvious doctrine, once again, Justice McLaren, is, in fact, a mixed question of law. In fact, because what the court was examining is did we owe a duty a tort duty in the first instance? Solely a question of law. This assertion now that section 414 of the restatement is somehow still floating around in this case. 414 was never mentioned in summary judgment. There's no evidence of retained control by G. Porter or by my co-defendant. The appellate brief makes no mention of retained control of section 414 until page 25 and 26 of the plaintiff's brief. It's not pled the law in the complaint. The Structural Work Act was repealed in 1995, almost 15 years ago. And in the last 15 years, this court and every other Illinois appellate court has rendered extensive opinions analyzing liability for contractor negligence under section 414 and articulating what the cause of action requires in order to establish proof. There is absolutely no question that 414 is the only exception to allowing liability to attach to an independent contractor. The law has been very, very developed in 15 years. If 414 was intended to be a cause of action in this case, it should and must have been pled. Furthermore, this court in Conningham v. Pope's Lease, 2nd District, 2001, page 27 of our brief, does not have retention in a contract of the right to make sure that safety precautions are being followed, which is what plaintiff is arguing is in these contracts, as co-counsel noted, or even in the record. Retention of control in that contract with safety precautions, without absolute proof of control of the incidental aspects of the work, and the record in this case is devoid and completely silent of any retained control by either of these defendants of the plaintiff, are not sufficient for 414 liability. So even if it was pled, even if the trial court erroneously dismissed 414, which it didn't because it was never raised in the trial court, even if it was pled, the record is totally devoid of any proof to support allowing the section 414 case to get to a jury because there's no retained control and the case wasn't discovered on that basis. So for all those reasons, there was no error in the law court. Thank you. Mr. Rudnick? Good morning. My name is Ray Rudnick. I just want to address a couple of the points that have been raised. First, in regards to the stone path, the only testimony truly regarding the stone path was Mike Barr from Oswego School District. He testified that he complained to Dodd twice that there was no entrance and access to the building, and that stone path was put from the port of John to one entrance of the building, not from the entrance or the parking lot or where the machines come in or where the equipment is dropped off or the supplies are dropped off. I'm sorry. Are you saying that the stone path or the gravel path – is the stone path and the gravel path the same thing? Yes, the stone path and the gravel path are the same. And the gravel path goes from a port-o-potty rather than a warehouse? To one entrance of the building. There are multiple entrances to the building, many access points, but the complaint was there was too much mud being knocked into the port-o-potty, and that's why the stone path was put there. Not for people to access the building. In fact, there's multiple testimony from Neil Dodd, from Mike Barr, from the plaintiff, that there were multiple access points to the building and that there's not one designated route. To get to the building from any point, you had to go through the mud and water, except unless you were coming from the port of John. Why do you say through mud and water when opposing counsel said that the deposition indicated that where he fell it wasn't wet? There is a large area from the parking lot where the trailer was, where the plaintiff was originally, to the building. The photos that are included as part of the record show the standing water, show the mud throughout this project. Why is standing water not where he fell important? It sounds to me strange because I believe I've read and I've written cases where someone has slipped and fallen in a grocery store, and normally they slip and fall where it's wet, not where it's dry. Grocery stores usually aren't found liable because a spot 20 feet or over in the next aisle was wet, whereas where they fell it was dry. So what relevancy or materiality is it that it's wet someplace else than where he fell? Well, it shows how bad the site was, first of all. The lack of disregard on especially Dodd, but in Porter, creating the ruts, that there was this much water creating this much mud creating this many ruts and the depth of the ruts and how difficult it was to transverse from any access point through the job site. Opposing counsel said that your argument was not that the plaintiff was distracted by the cell phone usage, but he was distracted by the ruts. Is that correct? Yes. The court found that without any evidence to support it, that he was distracted by the cell phone use. Porter said that there was no distraction. Dodd said it was the cell phone use. We contend that the phone had nothing to do with distraction. How could he be distracted by something that you don't see? He did see. The testimony is clear that he was looking from rut to rut as he was stepping. Well, if he was looking from rut to rut, wouldn't that mean that the ruts were open and obvious to him? No, because what we're saying is that the quality of the rut, how it was built, how it was constructed is the problem. There's been testimony from multiple people that they walked through the ruts all the time on this job site. None of them collapsed. And even the plaintiff testified that he walked through the ruts and none of them collapsed. That's just how you had to get through the job site. Multiple parties testified in this case how bad the site was. In fact, Melvin Greathouse testified. Normally a distraction is supposed to be something like you look at this hand while something over in this hand is happening. Now, apparently he's looking at the struts he's walking in, and he is supposedly distracted by looking at the hand that the magician doesn't want you to look at? And he's looking at the hand where the magic is happening? No. I'm having a hard time conceptualizing how you can be distracted by a rut you're looking at. The court first mentioned in a pint that it was the phone. That was the distraction. We never conceded that point. And, in fact, we argued the exact opposite, that it wasn't the phone that was the distraction. It was the quality of the site. He's walking through. He has no idea that this rut is not going to be able to hold his weight. That's like someone saying that there's a sign that says there's a minefield ahead, but because they can't see the mines, they can disregard the sign. Except in this case, the person apparently actually saw the rut that he stepped in or on, which means that, in my analogy, he not only supposedly saw a sign saying this is a minefield because it was so wet and sloppy throughout the entire site, but he actually stepped on the mine that supposedly broke his ankle. Well, Your Honor, we're saying as the quality of the whole site and all the complaints from these multiple people that were on site, like Melvin Greyhouse, who got removed from the site because he complained so much, that there's a question of fact that this should have went to the jury. This wasn't, as the court found open, obvious. Do you remember, I think it was the Kmart case, where the person carried a mirror into a concrete or metal filled with concrete post? Yes. I don't believe in that case the Supreme Court said that the person was distracted by the post. I believe it indicated that the person was distracted because the door that he walked through didn't have a window in it, for one thing. So when he walked through the door with the mirror in front of him, he didn't see that which impaled him or caused him to be injured. But it seems like you, other or contrary to the Kmart case, are claiming that it was the post in the Kmart case that actually distracted the individual and not the totality of the surroundings. Had he been distracted by the post, how could he have run into it? I'm sorry, Your Honor, I didn't see the car that I plowed into because I was distracted by the car that I plowed into. That seems to be the argument you're making. I'm having a hard time accepting it. Well, this also has to do with our construction negligence allegations, which were part of the amended complaint, as well as the arguments that we raised regarding the contractual duties that were made part of the summary judgment argument and the motion for re-hearing. Is there someplace in the record that you can refer us to that proves that you raised these issues below relative to the construction negligence? The amended complaint contains allegations, which is a part of the record. Failed to provide a safe place to work, failed to provide active safeguards, failed to supervise the work being done. These weren't addressed by either defendant in the motions for summary judgment. They focus solely on premise liability. The court focused solely on premise liability. Page 835, this is our brief to this court, contains the transcript. This is for summary judgment. On page 835, we talk about joint and several liability, the two controlling employers, unsafe job site. Porter was a subcontractor. Their form for the contract that was used gave them the identical responsibilities as Dodds did, because they had the same type of language in those contracts. In that hearing for summary judgment, we do talk about both. However, the focus of the argument was based upon their summary judgment motions, which were premise liability. That's what we tailored the argument to, and that's what the judge below gave his opinion on. He did not address any of these points. Do you agree that it's your responsibility to present a case that arguably will sustain your cause of action? I agree it's our responsibility to argue the points necessary, which we did at the summary judgment hearing. However, it's not our responsibility to have a trial at the summary judgment hearing. And we focused on the allegations that were made against us. Do you have any questions? Thank you very much. Thank you very much. The case has been taken under advisement. This position issued as quickly as reasonably possible.